**COSTELLO & MAINS, P.C.**
By:   Kevin M. Costello, Esquire
18000 Horizon Way, Suite 800
Mount Laurel, NJ 08054
(856) 727-9700
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRITTNY LINDER, | : |
| Plaintiff, | : |
| | : Civil Action No. 14-CV-1821 |
| vs. | : |
| MCKESSON CORPORATION; ADECCO USA, INC. and JOHN DOES 1-5 AND 6-10: | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| Defendants. | : |

Plaintiff, Brittny Linder, residing in Camden, New Jersey, by way of Complaint against the defendants, says:

**Preliminary Statement**

This matter is opened to the Court pursuant to the New Jersey Law Against Discrimination's ("LAD") prohibition against workplace harassment based on gender, discrimination based on disability and/or perceived disability and retaliation for engaging in

protected activity in violation of the LAD.   Plaintiff avers that she was subjected to a hostile work environment because of her gender, discriminated against because of her disability and/or perceived disability by her employer and retaliated against for engaging in protected activity under the LAD.

## Reason for Amendment

The Plaintiff is amending her initial complaint to add additional and more specific facts regarding her disability and accommodation request in support of Counts II and III of her complaint.

## Identification of Parties

1.     Plaintiff Brittny Linder is a female who resides in Camden, New Jersey, and was, at all relevant times herein, an employee of the defendants.

2.     Defendant McKesson Corporation ("McKesson") is a New Jersey corporation doing business at 1130 Commerce Blvd., Swedesboro, New Jersey 08085.

3.     Defendant Adecco USA, Inc. ("Adecco") is a New Jersey staffing company doing business at 3747 Church Road, Suite 3, Mt. Laurel, New Jersey 08054.

4.     Defendants John Does 1-5 and 6-10, currently unidentified, are individuals and/or entities who, on the basis of their direct acts or on the basis of *respondeat superior*, are answerable to the plaintiff for the acts set forth herein.

## General Allegations

5.      In 2013, plaintiff was hired by defendant Adecco.

6.	Plaintiff was placed by Adecco at defendant McKesson, and began working at McKesson on March 13, 2013 as a material handler in the packaging area.

7.	In or around May, 2013, McKesson hired an employee named Leon Winston.

8.	Almost immediately upon him being hired, Leon Winston began to sexually harass the plaintiff.

9.	On a daily basis, Winston would ask the plaintiff when the two of them were going to go out to eat or when the two of them were going to go out on a date.

10.	The plaintiff would tell Winston on a daily basis to leave her alone, and that she was not interested.  However, Winston would continue to ask her these questions.

11.	Plaintiff told her supervisor, Debbie, that Winston was sexually harassing her, and asked Debbie if she could move Winston to a different department.

12.	However, Debbie did not do anything about the sexual harassment, did not report the sexual harassment, and simply moved Winston to a different area in the same department.

13.	In moving Winston, he was still only several feet away from the plaintiff, and continued to sexually harass her on a daily basis.

14.	Winston would tell all the individuals working at McKesson that he was dating the plaintiff, and would frequently walk up next to the plaintiff and attempt to touch her.

15.	As the harassment continued, the plaintiff continued to make complaints to her supervisor Debbie and then also began making complaints to her other supervisor Dolene.

16.	Despite plaintiff's numerous complaints to both Debbie and Dolene, nothing was done about the harassment.

17. The harassment became so bad that eventually the plaintiff suggested that she herself be moved to a different department, but both Debbie and Dolene denied the plaintiff this transfer.

18. On August 27, 2013, around 1:30 a.m., the client and her co-workers were finishing up their shift when Winston approached the client and stated to her "I'm tired of this" and "You're not going to keep pushing me off."

19. Upon hearing this, two female co-workers of the plaintiff's began to laugh, and Winston approached the plaintiff and attempted to spit on her.

20. Winston then stated to the plaintiff "You keep thinking this is a game" and "I'm going to follow you home."

21. Shortly after Winston made these comments, the general manager at McKesson, Frederick, approached Winston and the plaintiff and asked what was going on.

22. At that time, plaintiff told Frederick and her supervisor, who also approached at that time, that Winston was again harassing her and even said that he was going to follow her home.

23. At that time, plaintiff asked both Frederick and her supervisor if they would do something about Winston's sexual harassment of her.

24. At that time, the supervisor spoke to Winston, Winston returned to his work station, and at some point, Frederick and the supervisor both left. After Frederick and the supervisor left, the only individuals present were the employees in the plaintiff's section.

25.     At that point in time, the plaintiff began to leave her station and attempted to go home.

26.     As the plaintiff attempted to go home, Winston grabbed her by her shirt and then grabbed her head and ripped her hair off and slammed her face onto a conveyor belt at the facility.

27.     Winston then held the plaintiff's face against the conveyor belt and began to punch the plaintiff in the back of her head and in her back.

28.     As Winston was assaulting the plaintiff, she was screaming at him telling him to stop.   Plaintiff's co-workers were watching the assault occur, but did nothing.

29.     Several of the plaintiff's co-workers were actually laughing as she was being assaulted by Winston.   During the assault, two of plaintiff's co-workers said to Winston "let's go home," at which point in time Winston stopped assaulting the plaintiff and left.

30.     Immediately after the assault, plaintiff contacted the Logan Township Police Department.

31.     The next day, on August 28, 2013, the plaintiff contacted her contact at defendant Adecco, Carmen Burgos, and told her about the sexual harassment and the assault that she had been subjected to at McKesson.

32.     The following day on August 29, 2013, plaintiff was diagnosed with post-traumatic stress disorder "PTSD," as a result of the assault that plaintiff was subjected to at McKesson.

32a.    The Plaintiff provided Burgos a letter from her doctor stating that she could return to work on August 29, 2013, that she could not lift more than 20 pounds, and could not push or pull over 40 pounds.

32b.    The Plaintiff further provided Burgos with a letter from her doctor stating that she had been diagnosed with PTSD.

32c.    On the same day Burgos received these documents stating the Plaintiff had restrictions and suffered from PTSD, she sent all of these documents to McKesson.

33.    On or around August 29, 2013, Burgos also notified defendant McKesson that plaintiff was making a claim that she was subjected to a sexually hostile work environment while at McKesson and that nothing was done when she made complaints about such.

34.    DELETED

35.    On September 6, 2013, Burgos notified the plaintiff that McKesson was terminating her employment due to a lack of work.

36.    Plaintiff worked at McKesson from March 13, 2013 until September 6, 2013, and during that period of time was an employee of McKesson for the purposes of the LAD.

37.    During the seven month period of time plaintiff worked for McKesson, McKesson controlled the means and manner of plaintiff's work performance, supervised plaintiff, provided all of the equipment and the workplace in which she worked, paid her compensation, terminated plaintiff's employment, and employed other employees who performed the same tasks as the plaintiff.

38. During the time that plaintiff worked for McKesson from March 13, 2013 until September 6, 2013, plaintiff was also an employee, by contract, of Adecco.

39. All harassment claimed herein is either severe and/or pervasive.

40. All harassment towards plaintiff is claimed to be because of her gender, female.

41. All harassment subjected to by plaintiff is such that a reasonable female in the same or similar circumstance as plaintiff would have considered the workplace to have been altered to have been hostile and/or intimidating and/or abusive.

42. Defendants were negligent in deterring such conduct and/or failing to promulgate policies deterring such conduct.

43. In addition, after being made aware of the harassment, defendants failed to take proper remedial measures to stop the harassment.

44. In addition, because members of upper management engaged in the conduct, and because any and all of the conduct was especially egregious, punitive damages are appropriate to all counts.

45. The harassment was also hostile, intimidating and abusive inasmuch as it was discriminatory on its face.

46. Plaintiff has been caused to suffer both economic and non-economic losses as a result of the harassment.

47. Plaintiff suffered from PTSD and/or other mental and psychological conditions as a result of the harassment she was subjected to at the defendants.

48. Plaintiff was therefore disabled within the meaning of the LAD.

49. In addition and/or in the alternative, plaintiff was perceived as disabled by the defendants.

50. A determinative and/or motivating factor in plaintiff's discharge was that she was disabled perceived to be disabled and/or engaged in protected conduct under the LAD.

51. Because plaintiff's termination was egregious and because upper management participated in the same and/or was willfully indifferent to the same, punitive damages are warranted.

52. Plaintiff engaged in protected activity by making complaints to members of upper management that she was being subjected to sexual harassment.

53. Plaintiff also engaged in protected activity when she made a request for an accommodation that she be given protected time off because of her disability.

54. Plaintiff was subjected to adverse employment actions including termination as a result of engaging in this protected activity.

55. Plaintiff's engagement in protected activity was a motivating factor in the adverse employment actions that occurred subsequent to plaintiff engaging in protected activity.

56. The plaintiff's membership in one or more of the protected categories set forth above was a determinative and/or motivating factor in the discrimination and/or harassment that she was subjected to.

57. Because the discrimination, harassment and retaliation was knowing, intentional and purposeful, punitive damages are warranted, because the conduct was undertaken by members of upper management.

58.     To the extent there is any "mixed motive," plaintiff need only show that a determinative and/or motivating factor in the conduct directed towards her was because of her membership in one or more of the protected groups set forth above.

## COUNT I

### Sexual Harassment Under the LAD

59.     Plaintiff hereby repeats and realleges paragraphs 1 through 58, as though fully set forth herein.

60.     The conduct set forth above constitutes sexual harassment based on gender and is the responsibility of the defendants, both in compensatory and punitive damages, for the reasons set forth above.

WHEREFORE, plaintiff demands judgment against the defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

## COUNT II

### Disability Discrimination Under the LAD

61.     Plaintiff hereby repeats and realleges paragraphs 1 through 60, as though fully set forth herein.

62.     For the reasons set forth above, plaintiff's termination was based upon her disability in violation of the LAD.

WHEREFORE, plaintiff demands judgment against the defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

## COUNT III

### Perception of Disability Discrimination Under the LAD

63. Plaintiff hereby repeats and realleges paragraphs 1 through 62, as though fully set forth herein.

64. For the reasons set forth above, plaintiff's discharge was based upon defendants' perception that plaintiff was disabled in violation of the LAD.

WHEREFORE, plaintiff demands judgment against the defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

## COUNT IV

### Retaliation Under the LAD

65. Plaintiff hereby repeats and realleges paragraphs 1 through 64, as though fully set forth herein.

66. For the reasons set forth above, defendants unlawfully retaliated against plaintiff for engaging in protected activity in violation of the LAD.

WHEREFORE, plaintiff demands judgment against the defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

## COUNT V

### Request for Equitable Relief

67. Plaintiff hereby repeats and realleges paragraphs 1 through 66 as though fully set forth herein.

68. Plaintiff requests the following equitable remedies and relief in this matter.

69. Plaintiff requests a declaration by this Court that the practices contested herein violate New Jersey law as set forth herein.

70. Plaintiff requests that this Court order the defendants to cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific plaintiff and as to all other individuals similarly situated.

71. To the extent that plaintiff was separated from employment and to the extent that the separation is contested herein, plaintiff requests equitable reinstatement, with equitable back pay and front pay.

72. Plaintiff requests, that in the event that equitable reinstatement and/or equitable back pay and equitable front pay is ordered to the plaintiff, that all lost wages, benefits, fringe benefits and other remuneration is also equitably restored to the plaintiff.

73. Plaintiff requests that the Court equitably order the defendants to pay costs and attorneys' fees along with statutory and required enhancements to said attorneys' fees.

74. Plaintiff requests that the Court order the defendants to alter their files so as to expunge any reference to which the Court finds violates the statutes implicated herein.

75. Plaintiff requests that the Court do such other equity as is reasonable, appropriate and just.

WHEREFORE, plaintiff demands judgment against the defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

**COSTELLO & MAINS, P.C.**


By:     /s/Kevin M. Costello

Dated: 6/18/14                           **Kevin M. Costello**

## DEMAND TO PRESERVE EVIDENCE

1. All defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to plaintiff's employment, to plaintiff's cause of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including, but not limited to, electronic data storage, closed circuit TV footages, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

2. Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

**COSTELLO & MAINS, P.C.**

By:       /s/Kevin M. Costello
        Kevin M. Costello

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**COSTELLO & MAINS, P.C.**

By:       /s/Kevin M. Costello
        **Kevin M. Costello**

## RULE 4:5-1 CERTIFICATION

1. I am licensed to practice law in New Jersey and am responsible for the captioned matter.

2. I am aware of no other matter currently filed or pending in any court in any jurisdiction which may affect the parties or matters described herein.

**COSTELLO & MAINS, P.C.**

By:  **/s/Kevin M. Costello**
     **Kevin M. Costello**

## DESIGNATION OF TRIAL COUNSEL

Kevin M. Costello, Esquire, of the law firm of Costello & Mains, P.C., is hereby-designated trial counsel.

**COSTELLO & MAINS, P.C.**

By:  **/s/Kevin M. Costello**
     **Kevin M. Costello**